(April 1, 1919.)

## J. M. NEIL, Respondent, v. MICHAEL HYDE et al., Appellants.

### [186 Pac. 710.]

WATERS AND WATERCOURSES — APPROPRIATION — PRIORITY — ABANDON-
MENT—EVIDENCE—DUTY OF WATER—RES ADJUDICATA.

   1.   A decree will not be disturbed because of conflict in the evi-
dence if the proof in support thereof, if uncontradicted, would be
sufficient to sustain it.

   2.   A decree is none the less conclusive because it is entered on
stipulated facts, and water rights therein determined cannot be
again litigated between the same parties in a subsequent suit in
which the same or other water rights are questioned by other parties.

   [As to what judgments are *res adjudicata,* see note in 14 Am. St.
250.]

APPEAL from the District Court of the Third Judicial
District, for Ada County. Hon. Chas. P. McCarthy, Judge.

Action to quiet title to use of water. Judgment for plain-
tiff. *Affirmed.*

J. J. McCue, J. C. Johnston, J. G. Watts, D. A. Dun-
ning and Hawley & Hawley, for Appellants.

The decree and judgment is not *res adjudicata,* for the rea-
son that no judgment can be pleaded as an estoppel or *res
adjudicata* unless it was pronounced by decision of the court
upon the merits and is his conclusion upon the facts after a
final hearing of the case. There is nothing entered in the
decree but the facts stipulated between the plaintiff and de-
fendant therein, and the stipulation was made a part of the
decree and entered as stipulated and agreed upon by the
parties. (*Laguna Drainage District v. Chas. Martin Co.,* 5
Cal. App. 166, 89 Pac. 993; *City of Oakland v. Oakland
Water Front Co.,* 118 Cal. 160, 220, 50 Pac. 277; *Water,
Light & Gas Co. v. Hutchinson,* 160 Fed. 41, 90 C. C. A. 547,
19 L. R. A., N. S., 219; *Robb v. New York & C. Gas Coal Co.,*

216 Pa. St. 418, 65 Atl. 938; Kinney on Irrigation and Water Rights, pp. 28–30; *Union Mill & Min. Co. v. Dangberg,* 81 Fed. 73; 2 Black on Judgments, sec. 617; 24 Am. & Eng. Ency. of Law, 2d ed., 775, 778; *Lillis v. Emigrant Ditch Co.,* 95 Cal. 553, 30 Pac. 1108; *Josslyn v. Daly,* 15 Ida. 137, 96 Pac. 568.)

Oppenheim & Lampert, for Respondent.

Where it is shown that the evidence is conflicting and there is competent evidence to sustain the findings, the appellate court will not disturb the lower court's decision. (*Cameron Lumber Co. v. Stack-Gibbs Lumber Co.,* 26 Ida. 626, 144 Pac. 1114; *Pine v. Callahan,* 8 Ida. 684, 71 Pac. 473; *Sabin v. Burke,* 4 Ida. 28, 37 Pac. 352; *Miller v. Blunck,* 24 Ida. 234, 133 Pac. 383; *Robbins v. Porter,* 12 Ida. 738, 88 Pac. 86; *Heckman v. Espey,* 12 Ida. 755, 88 Pac. 80; *Dougan v. Seattle,* 76 Wash. 621, 136 Pac. 1165, 51 L. R. A., N. S., 214; *Karges Furniture Co. v. Amalgamated Wood Workers' Local Union,* 165 Ind. 421, 6 Ann. Cas. 829, 75 N. E. 877, 2 L. R. A., N. S., 788; Jones on Evidence in Civil Cases, 2d ed., sec. 393.)

A judgment by consent has the same force and effect as any other judgment. (23 Cyc. 729; *Continental Bldg. & Loan Assn. v. Woolf,* 12 Cal. App., 725, 108 Pac. 729; *Langdon v. Vermont & C. R. Co.,* 54 Vt. 593, 606; *Jenkins v. Purcell,* 29 App. Cas. (D. C.) 209, 9 L. R. A., N. S., 1074, 1076; *Clark v. Southern Can. Co.,* 116 Md. 85, 81 Atl. 271, 36 L. R. A., N. S., 980, and note.)

The true tests of an estoppel on account of a former water adjudication are, first, the identity of the rights sued for; second, the identity of the cause of action; and, third, the identity of the persons and parties to the action. Where these conditions are present, former decrees which are final and unreversed, are *res judicata* of the subject matter of the suits as then decided between the parties thereto and their successors in interest, and that, too, whether the court based its decree upon a correct or erroneous view either of the law

or of the facts. (Kinney on Irrigation and Water Rights, 2d ed., sec. 1563.)

MORGAN, C. J.—This is an action brought in Owyhee county to determine the rights to the use of the waters of Catherine Creek and its tributaries, all situate in that county, and the priorities of those rights between the original parties and such as might be properly brought in, and to restrain appellants from using the waters of said streams to the detriment of respondent.

All the appellants, some of whom were originally made defendants, and some of whom were afterwards brought in, by appropriate pleadings joined issue with respondent and by cross-complaint claimed rights to divert and use waters of the different creeks adversely to him. For convenience of the parties the trial was had in Ada county. A decree, fixing the priorities of appropriations and amount of water each party is entitled to use, and enjoining the parties from in any way interfering with the rights of the prior appropriators was rendered by the trial judge and entered. Motions for a new trial were made by appellants and, after the same were heard, the original decree was modified and the motions overruled. Appeals from the judgment and the order overruling the motions for a new trial were perfected.

Among the many errors assigned by counsel representing the different appellants are: That the findings of fact as to the amounts of water and priorities of the respondent are contrary to and not justified by the evidence in the following particulars: That the evidence shows neither respondent nor his predecessors applied all the waters awarded to him to a beneficial use within a reasonable time after appropriation; that respondent's predecessors lost any priority they had in the right to use certain of the waters by their failure to use said waters for beneficial purposes for a period of time, prior to the commencement of the action, sufficient to work a forfeiture or abandonment, while appellants, during such period, continually used said waters for beneficial purposes, adversely to respondent, thereby acquiring prescriptive rights;

that respondent, since the original appropriation, has changed the point of diversion of some of his ditches to the detriment of intervening rights of some of the appellants, which intervening rights are, by the decree, ignored or declared inferior to those of respondent; that respondent's predecessors used the waters of various streams alternately on different lands, while the findings and decree give appropriations for the same water and at different dates upon different pieces of land; also that certain appellants are denied the right to use waters coming from springs arising on or near their land while the evidence shows that such waters, if uninterrupted, would not reach the points of respondent's diversion; that the evidence shows the use of the waters of the streams by appellants is beneficial, and not harmful, to respondent and other users of water in the lower valley; that the findings of fact and decree regarding appellants', Neiss' & Torrance, right to the use of waters of Pickett Creek are contrary to the evidence, as well as that portion of the decree regarding the appellant Nora Linehan's right to the amount of and priority of right to the use of the waters of Pickett and Bates Creeks as affecting respondent and appellant Hardiman, and that the duty of water is not correctly found or decreed. All these assignments, on final analysis, go to the sufficiency of the evidence only, and the decision of each question involved must necessarily turn on the facts established. There is no contention made therein that the law has not been properly applied to the facts as found.

The record on appeal contains approximately 1,200 pages of transcript of testimony; the trial lasted from December 2 to December 16, 1913; upwards of forty witnesses were examined, much documentary evidence was introduced and the histories of the different rights involved were gone into from their inception, some as far back as the year 1864, with the result that there is much conflict in the testimony. From an examination of the evidence the conclusion is inevitable that there is sufficient proof to sustain each and all of the findings of fact. It is the rule in this state that a decree will not be disturbed because of conflict in the evidence if the

proof in support thereof, if uncontradicted, would be sufficient to sustain it. (*Cartier v. Buck,* 9 Ida. 571, 75 Pac. 612; *Hayton v. Clemans,* 30 Ida. 25, 165 Pac. 994; *Holland v. Avondale Irr. Dist.,* 30 Ida. 479, 166 Pac. 259; *McKeehan v. Vollmer Clearwater Co.,* 30 Ida. 505, Ann. Cas. 1918E, 1197, 166 Pac. 256; *Davenport v. Burke,* 30 Ida. 599, 167 Pac. 481; *Hemphill v. Moy,* 31 Ida. 66, 169 Pac. 288.)

Special consideration has been given to assignment of error No. 6, which is in the following language: ''That the district court erred in failing and refusing to specially find the method and manner of defendants Neiss & Torrance in appropriating the waters of Pickett Creek; the ditch through which it was appropriated, and likewise the original ditch of plaintiff's predecessors, appropriating the waters of Pickett Creek for use on the Tim Shea ranch; the land covered by said ditch and watered from it, the present method of obtaining water from said Pickett Creek on the lands formerly covered by the Tim Shea ditch and the lands covered by the Pitman ditch, now used by plaintiff in lieu of said Tim Shea ditch; and likewise erred in not so specially finding in the findings of fact and so announcing in the decree that the right of said Neiss & Torrance was and is superior in time and right to the waters of said Pickett Creek, used upon said Tim Shea ranch, than the right of plaintiff,'' for the reason that counsel for these appellants, in their brief, insist that there is no evidence justifying the award to respondent of waters from Pickett Creek of date as early as February 14, 1870, to irrigate 53 acres of land, and to appellants, Neiss & Torrance, of date as late as April 1, 1882, to irrigate 72.76 acres, and that because of a change in the point of diversion made by respondent in 1910, by taking water through what is referred to in the testimony as the Pitman ditch instead of the so-called Shea ditch, he is enabled to obtain the use of water which rightfully belongs to appellants, Neiss & Torrance.

The findings and decree disclose that no right to use water is given respondent under that priority which he, according to the evidence, did not have before the time of diversion through the Pitman ditch; that appellants, Neiss & Tor-

rance, are awarded the use of all the water the proof justifies, and that their right is fixed by the trial court at the earliest possible date it could be under the law, and the facts established. Briefly stated, respondent is awarded the use of water, by reason of the right now being considered, to irrigate 53 acres of land on lots 2 and 3 and NE. ¼ of SW. ¼ of sec. 30, twp. 4, S., R. 1 E., B. M., claimed by appropriation of date February 14, 1870, by Timothy Shea. According to the testimony of James Lowry, who has been acquainted with the Catherine Creek country since the year 1864, the Shea ditch, through which the water was diverted prior to the year 1910, was constructed by Isaac Jennings in 1865 or 1866, having a capacity to carry 350 miner's inches of water, and was used to irrigate some small patches of cultivated ground and some pasture. Timothy Shea was the successor of Jennings in the use of water through that ditch but obtained no writing conveying the water right. He filed on the above-described land on February 14, 1870. The testimony of the witnesses Cook, David Hyde, Kreig, Landor and Neil shows that this ditch has, since that date, been used continuously to convey water from Pickett Creek for irrigation on said land, until 1910. For the reason that it was difficult to keep the dam in at that point and the flood waters would wash around it and change the channel, a new ditch was, in the latter year, constructed to take out the water above the point where appellants, Neiss & Torrance, diverted water from that creek. As before stated, no right to use of water, not had by respondent at the time he made the change in the point of diversion, is awarded him by the decree, nor is he thereby permitted to affect injuriously the rights of appellants.

Neiss & Torrance are the successors in interest of George Ulrich to a right to use water from said creek, and are awarded the right to the use of 363.80 inches of water for 72.76 acres irrigated area on the SE. ¼ of NE. ¼, NE. ¼ of NE. ¼, and NW. ¼ of NE. ¼, sec. 25, twp. 4 S., R. 1 W., B. M. of date April 1, 1882. Ulrich, according to his own testimony, as a witness for appellants, in the year 1882

bought the ditches and improvements on what is now the Neiss & Torrance tract from a man named Field, and obtained a bill of sale for the same. This instrument was not recorded, was lost and not produced. Ulrich testified that no water rights were mentioned therein. In answer to the following question by counsel for appellants: "Then your date of user of the water dates from the spring of 1882," Ulrich answered, "Yes, sir." The findings of fact on these priorities are in accordance with substantial evidence and the decree follows the findings.

It is claimed in behalf of appellant, Nora Linehan, that she is entitled to water to irrigate 53.22 acres of land she had under cultivation within the hereinafter described subdivisions and that she ought to have been given a priority over appellant Hardiman. In support of these contentions it is urged, first, that eighteen acres of the cultivated land of said Nora Linehan were lost sight of entirely and that she was decreed no water for them from any source or from any date; second, that her priority on Pickett Creek should date from 1874. The assertion that eighteen acres of the cultivated land were lost sight of is not, however, borne out in the findings and decree. By the latter she is awarded 68.20 inches of water from Bates Creek of date April 1, 1876, appurtenant to the SW. ¼ of NW. ¼, sec. 28, and SE. ¼ of NE. ¼, sec. 29, Twp. 4 S., R. 1 W., B. M.; for 13.64 acres irrigated area, being an appropriation by Patrick Linehan, whose successor she is, and 117.25 inches of water from Pickett Creek of date April 1, 1880, for water appurtenant to the NW. ¼ of SW. ¼, sec. 28, and NE. ¼ of SE. ¼, sec. 29, same township and range; for 23.45 acres irrigated area, being an appropriation by said Linehan, these two tracts of land being known as the homestead, and 86.90 inches of water from Bates Creek of date April 1, 1907; appurtenant to the SW. ¼ of NE. ¼ and SE. ¼ of NW. ¼, said sec. 29, known as her desert entry, for 17.38 acres irrigated area. The amount and priority of this last award is positively established by the evidence of appellant Linehan and her witness Franklin, who surveyed the tract. She testified that she

began cultivation and used water for the first time on this
desert entry in 1907, the second year after she filed. Her
filing was in 1905. The survey of the irrigated area within
her desert claim shows 17.08 acres. In regard to the two
priorities for the homestead the evidence can hardly be said
to be conflicting, and a painstaking examination of the testi-
mony of all the witnesses fails to disclose any that would jus-
tify earlier dates for either of these two water rights. The
priority of the Hardiman right as fixed by the decree is also
sustained by the proof.

One of the assignments of error is in the following lan-
guage: "The court erred in its findings of fact and the decree
based thereon in awarding three inches of water for every
acre of cultivated land on the part of the plaintiff, or in
awarding to plaintiff in the low-water season, any other, fur-
ther or greater amount than $5/8$ of an inch to the acre of land
cultivated." In support of this it is urged that as a matter
of public policy the courts should confine the users of water
to the lowest limit; that the legislature and this court has
recognized the propriety of this doctrine. We are in full
accord with the declaration of the legislature on this subject
and reaffirm what has been said thereof in *Stickney v. Han-
rahan,* 7 Ida. 424, 63 Pac. 189. However, in this case the
record discloses that the parties entered into the following
stipulation: " . . . . It is now agreed that the lands of the
plaintiff require three inches of water per acre continuous
flow, measured under four-inch pressure, for the proper irri-
gation and cultivation. That the lands of each and every
of the defendants and cross-complainants require for their
proper irrigation and cultivation five inches per acre contin-
uous flow under a four-inch pressure. This stipulation, it
is understood, is not to in any wise affect the decree herein-
before referred to entered in the case of *Michael Hyde v.
William and Patrick Hardiman.* It being further under-
stood that the decree referred to has no relation to parties
other than the parties to the decree and their privies and
successors in interest."

There is much testimony to the effect that, owing to the great porosity of the soil and the slope of the land to be irrigated, a large volume of water is necessary to successfully raise ordinary crops. The evidence is sufficient to sustain the finding of fact on this question. Furthermore, in view of the stipulation appellants cannot, in this court, be heard to question that finding or the portion of the decree based thereon.

It is claimed by respondent that his interests were adjudicated between his predecessors and appellant Hardiman in a decree entered April 16, 1898, fixing their respective priorities. Hardiman was brought into this suit at the instance of other users of water and appears by separate counsel. In his answer and cross-complaint he claimed a right to the use of the waters of Pickett Creek, dating his claim of priority of October, 1865, and a right by prescription to water flowing from a spring arising on his land, and he also set forth the decree above referred to, asked to have it modified and his right to the use of water declared prior to all others.

With the exception hereafter noted, the errors assigned in behalf of this appellant all go to the sufficiency of the evidence to sustain the findings and are covered in the discussion of those of the other appellants. The exception is the assignment that the decree entered in 1898 is not *res adjudicata,* for the reason that "no judgment can be pleaded as an estoppel or *res adjudicata* unless it was pronounced by decision of the court upon the merits and is his conclusion upon the facts after a final hearing of the case." While this may be a general statement of the rule, it seems to have been improperly construed by counsel. The term "upon the merits" in this connection means on a matter of substance, as distinguished from matter of form; the real or substantial grounds of action or defense, in contradistinction to some technical or collateral matter raised in the course of the suit (27 Cyc. 483), and "after final hearing" means after the cause is finally submitted to the court for decision.

"As between parties *sui juris,* and in the absence of fraud, a judgment or decree of a court having jurisdiction of the

subject matter, and rendered by consent of the parties, though without any ascertainment by the court of the truth of the facts averred, is as binding and conclusive between the parties and their privies as if the suit had been an adversary one, and the conclusions embodied in the decree had been rendered upon controverted facts and due consideration thereof by the court.'' (15 R. C. L. 646. See, also, 23 Cyc. 1228.)

The judgment and decree pleaded by this appellant was entered on stipulation of facts between the parties, after complaint and answer were filed. In these pleadings the very matters adjudicated were alleged and denied. By the decree appellant was awarded the right to use certain of the waters involved in this suit and of which he has had the benefit for many years. The identical water rights involved in that suit, as well as the right to use additional water, is involved in this. The fact that in this suit other parties questioned appellant's water rights does not prevent the former decree being *res adjudicata* of the rights therein involved as between the parties to that suit. The test seems to be the identity of the rights sued for, the identity of the cause of action, and the identity of the parties. (Kinney on Irrigation, 2d ed., sec. 1563.) These three elements having been established, the trial judge correctly held that as to the water rights involved in the former suit, the decree entered therein was valid and binding, as between appellant Hardiman and respondent, and properly made such disposition of the rights not therein involved as the evidence and pleadings in this case justified.

No reversible error being found, the judgment and order overruling the motions for a new trial are affirmed. Costs are awarded to respondent.

Rice and Budge, JJ., concur.

ON REHEARING.

(January 26, 1920.)

BUDGE, J.—Upon the application of appellants William Koeppe and J. F. Carothers, a rehearing was granted in so far as their right to the use of the waters of Brown Creek is concerned.

In the petition it is alleged *inter alia* that the court overlooked what these appellants consider practically positive evidence of the abandonment by the respondent and his predecessors of the waters of Brown Creek. We are satisfied that this contention is not well taken, and that the finding of the court that "Neither plaintiff nor his predecessor in interest abandoned the use of the waters of said creek nor discontinued their use for such length of time as to constitute an abandonment or forfeiture" is sustained by substantial evidence. The record shows that he diverted the waters of Brown Creek through the Cook Ditch and applied them to a beneficial use, except when prevented from so doing by the appellants. He was not required to conduct these waters through any particular ditch, and even though he may have abandoned the ditches through which he formerly conducted the waters of Brown Creek, it does not follow that he abandoned the right to their use.

The following question was propounded to counsel for appellant, viz.:

"Does the use of the water by Koeppe and Carothers from Brown Creek decrease the flow of water at the head of the Cook ditch belonging to the plaintiff?"

If neither the surface nor underflow, if undisturbed, would reach the point of diversion of the prior appropriator, his flow would not be diminished by the diversion of water above him by a junior appropriator, and he could not complain. The burden rested upon appellants to show that neither the surface nor underflow, if uninterrupted, would reach the point of diversion of respondent, the senior appropriator.

After a careful re-examination of the record, we have reached the conclusion that appellants have failed to meet the burden of proof in this respect.    There is substantial evidence to support the finding of the court that appellants' appropriation and diversion of the waters of said creek above the lands of respondent diminishes the flow thereof.

For the reasons herein expressed, we adhere to our former opinion.

Morgan, C. J., and Rice, J., concur.